published in cases in this circuit, Sabnani and Friedman, that the weight of the evidence cannot justify detention, cannot justify even a finding of an actual risk of flight, without more concrete facts showing that there is actually a risk of flight, because weight of the evidence only establishes, at the most, a motive to flee. It does not establish an intent or an ability to flee. What about an ability to flee? She has no ability to flee. There's a pile of money, according to the government, sitting over somewhere that if... Which she has absolutely no access to and no control over. And not in six months, seven months, and now nine months, I'm sure, of investigation has the government been able to show that she has any money, or even that her husband has any money, that she retained any money from that, that she has any accounts with anything in them. And she has nothing. They live in a very small house with tenants. She has a federal defender. Mr. Edwards, by the way, Mr. Edwards, he's the mastermind. It's his scheme. He's the big fraudster here, who somehow got the Jacobses sucked into doing something for him. He's absconded, leaving them holding the bag. What about looking at Exhibit J? Are you disputing the accuracy or the authenticity of the e-mails? Exhibit J? You mean the letter? The Exhibit J letter? Yeah, if you look at Exhibit J, yeah. Well, Your Honor, I'm not sure exactly what we're disputing at trial yet, because we haven't even gone through all the discovery. I'm not the trial lawyer, but the case . . . I'm just trying to get a sense of, you know, we have these e-mails in front of us, supposed e-mails, and the district court had that as well. Right, but the point is about the e-mails, is that this is still just the government's one-sided proffer of evidence. The case cannot be pre-judged, no matter how damning the e-mails are. A court cannot look at evidence, documentary evidence, and say, come to the conclusion, I think she's guilty, I'm sure she's guilty, she's so guilty she's going to be convicted, so I'm going to let her start serving her sentence now. The only way the weight of the evidence can be considered, the only legitimate bearing it has on the bail determination, is how it bears on risk of flight. And the cases have not just detained someone or hold that they're an actual serious risk of flight, based only on an assessment of the weight of the evidence. That there has to be more. Otherwise, everybody would be a risk of flight, and everybody would be detained. Because in a one-sided proffer, I mean, the government would have to be able to show its case was strong. If it got through the grand jury, it would put its best foot forward, and there's no . . . If it gets through the grand jury, it doesn't always mean it's a strong case. Yeah, well, that's why it's a threshold. It's only a threshold. If the government can't even show that in a one-sided proffer, that it has a strong case to put to trial, then there can be no talk of risk of flight or detention. But more than that is required to actually detain somebody. Now, in this case . . . Doesn't the nature of the alleged crime figure into the question of whether there's a flight danger? Your Honor, the nature of the crime is one of the factors in that violent crimes or crimes of sex abuse and things like that have a presumption of risk of . . . Isn't that more danger than danger to the public rather than risk of flight? Right. So there's a presumption of detention. And this kind of case does not entail a presumption. There's a presumption of release in a fraud case. This is a regular fraud case. This case is charged as fraud and money laundering. It is no different from any other fraud case. The government keeps talking about the identity theft charges, but the identity theft charges in this case are incidental to the fraud. It involves . . . The allegations involve Mr. Jacobs, not Mrs. Jacobs. Mr. Jacobs posing as a Fed employee, a Fed official, and having business cards. So it's the kind of false claims and false identities that are used in a fraud. Am I misrecollecting the record on that? He participated in assisting that representation? The allegation is that she either planned to or talked about or maybe did pose as either his wife, which she is. She is his wife. Or his secretary while he was holding himself out as a Fed official. But what's important is that this is not the kind of identity theft that involves forged passports, official IDs, the kind of documents that would enable anybody to flee or get by any government official in any way. This is a business card that might fool an investor but isn't going to get anybody out of the country or able to do anything official. So this doesn't elevate the fraud to any greater risk of flight than any other fraud case. It's just a fraud case. The other point I'd like to make here is that the two co-defendants have been out. They are also involved with Mr. Rienzi for longer. Not their names, but what is their relationship to the... There are two co-defendants, Ms. Gendro and Mr. Lester, who are charged in the indictment also charged with the aggravated identity theft. And one of them in particular, Mr. Rienzi, for years, Mr. Edwards, Rienzi Edwards, is much friendlier with him. They've been out. No one has suggested that Edwards might help them. And Edwards has not helped them. They've come to court and they've appeared. So it doesn't make any sense... Is it the same judge who denied bailing your client, the one who allowed them to... It's the same judge, yes. Yes. So this whole business about how Mr. Edwards might help them is just conjecture. There's absolutely nothing to it. It's not facts. It's not based on any evidence. It doesn't even make sense. He's absconded. Other people have been left holding empty bags and are being prosecuted. Why on earth would he ever want to have anything to do with these people? And in fact, there's no evidence that he has with respect to the people who've been out and who he's friendlier with. On the issue of whether the district court took into account alternative bail packages, I understand you to say that the district court didn't. Is that correct? The district court didn't. The district court stated that he would only rule on the package offered and that he wasn't going to address a moving target. Didn't he inquire, though, or I may have misread this, about whether Defendant Sun would be able to put up a package? He did, Your Honor. And that's why it made no sense, the ultimate ruling, because in the beginning of the hearing, he inquired about that. And so then at the end when he denied the package and defense counsel asked, well, what if, you know, coming back to the judge's own question, what if we could get the Sun to co-sign for a million or for more? And he said, no, I'm not going to address a moving target. You've got the obligation to put up a package. And that's not true. So I mean, initially, what was the answer to his question about whether the Sun could put up the money? I think it was maybe. I don't remember exactly what it said, but maybe. But then there was a continuous argument made about detention and bail that was offered. And then at the end when he was denying it, he just denied it and didn't want to talk about any other conditions, any other possible conditions. And I just want to reiterate that this is a 65-year-old woman with no criminal record, a U.S. citizen born here, with no citizenship or residency abroad, no personal or professional ties abroad, who made no attempt to flee, but rather agreed to surrender when she learned there was a warrant for her arrest, whose history is one of 100 percent compliance with court orders to appear, because she had a prior case that was dismissed, and she appeared 14 times before that case was dismissed, while she had her passport and was allowed to travel and did. She always came to court. There is simply nothing here. There are no markers for risk of flight, nothing, except the government's claim that it's an overwhelming case, which is not enough, and some speculation about what the absconded Mr. Edwards might or might not do. In terms of how this is preceded, and I'll ask your adversary the same question, in terms of discovery requests, did you request more time to review this discovery in the case before trial? I believe the co-defendants requested more time to review discovery, and also the government hasn't even turned over all the discovery. It took the government six months, and it's probably not their fault, they probably weren't delaying, but it's so voluminous, that it took them six months to go through the discovery sufficiently to produce it. That's the stuff that was taken from Ms. Handler-Jacobs' home. Lots and lots of documents, electronic discovery, electronic devices, things like that. They still haven't turned over, because they only applied for a warrant for Mr. Michael Jacobs' electronics that were taken from him in December. They only applied for a warrant in July for those items, so we still don't have those. Some of those documents could be relevant to the whole bail thing. Pardon? That warrant issued. Yes. They got the warrant, and now they have that, but they're going through it and haven't disclosed it to us. That's another two months. This is a long case. There's a lot to be done in this case. Now there's a superseding indictment. There's not going to be a trial in November. That's just not going to happen. Thank you. Okay. Thank you. Good morning, Your Honors, and may it please the Court. My name is Daniel Noble. I'm an assistant United States attorney in the Southern District of New York. I represent the government in the district court and here on appeal. I'd like to ask you to respond to your adversary's view, that statement that Ms. Handler-Jacobs has kept all of her court appearances in New Mexico, in the securities fraud case there, and looking at her track record, what makes her a flight risk here? Sure, Judge. I have three responses concerning the New Mexico case. The first is an observation that Judge Gardefee made, is that that case was much, much less severe than this case. It involved proceeds of less than $500,000. There were a lot of counts at stake, but the time that she was facing in that case is of a much lesser magnitude than the time she's facing here, which is approximately guidelines of 15 to 20 years, a statutory max of 100 years. How long was she facing there? She was facing, I believe it was like two or three years on each count, stat max, but I don't have the information on what the guidelines were, but in terms of loss amount, it was $500,000 versus over $54 million in this case. So the penalties were much less severe. Second of all, that case, in terms of the timing of it, she was out on bail when she was engaged in the alleged conduct here. So she was traveling around the world internationally, met with an investor in Hong Kong. She traveled with the mastermind of the scheme, Rienzi Edwards, along with her husband to Sri Lanka, to Dubai. She was overseas for months at a time in Sri Lanka. All while she was . . . This scheme rather than the one that was the subject . . . Yes, Judge Sachs. So she was involved in the charge scheme that's at issue in this case while she was out on bail. And this Court has observed before that when a defendant commits crimes on bail or engages in the alleged conduct while out on bail, the District Court is allowed to draw the inference that she's not going to comply with any court order. And I think that's a reasonable inference that Judge Gardafy drew here. And the third issue is that she was charged with securities fraud, essentially lying to investors in the New Mexico case in order to get money and then making excuses to them. And it was essentially a Ponzi scheme, which is set forth in the indictment, which is part of the record. So she's lying to investors in that case to get money from them and then giving excuses as to why they're not seeing any returns. All the while, she's engaged in the conduct that's alleged here, which is remarkably similar, just on a much larger scale. So there's the nature of the evidence here. It's not just the weight, which obviously Judge Gardafy found very compelling here in terms of the penalty she's facing times the likelihood of conviction based on the government's proffer of evidence. And as this Court has repeatedly observed, a proffer by the government is completely acceptable at the bail determination stage. But it wasn't just the government's proffer. The government put forth evidence, the emails, the photograph, the bank records, showing that the defendant played a direct role in impersonating, helping impersonate Federal Reserve officials in order to entice investors to send millions of dollars. And it was her name, along with her husband's name, that was on the bank accounts that received over $10 million in investor funds and then sent that money overseas. And in the course of that, in order to carry out the scheme, she used a fake name, the name Ann Jack, for which she had business cards printed, for which she pretended to be the principal of a company called Kingdom Trust that was used to entice investors to send their money in, believing that the money was going to be held in a trust account. Instead, the defendant and her husband immediately turned around and sent millions of dollars of proceeds overseas to accounts that appear to be controlled by their co-defendant, Reanzi Edwards, who is still out, who has not been apprehended. The defense says he absconded. I mean, he's been in Sri Lanka. We know he's in Sri Lanka. He has not been arrested on these charges. And Judge Gardefee reasonably inferred that when you have a co-defendant, a co-conspirator who has received the millions of dollars in proceeds, it is not unreasonable to believe that that co-defendant may help a defendant abscond. Judge Raggi made the same observation in the Sabnani or Sabahani case, saying that it's not unreasonable to believe that somebody might help a defendant flee, and that's sufficient to help show that a defendant has the means to flee.  Of course, Judge. So, taking you back to December 11th of the end of this past year, did she surrender herself? She ultimately did, yes, Your Honor. But it was, as I explained below, a convoluted process. But she did surrender herself? Well, she didn't technically know. She was sitting in her car with one of the co-tenants of her house when the officers observed the vehicle, recognized the vehicle as belonging to her or her co-attendant, and then they arrested her. She did not actually physically surrender herself to law enforcement. Was the vehicle at the house or it was down the road? It was down the road, Judge Hall. It was at a parking lot of a gas station, which was nearby to a police station. So, we don't, you know, and Judge Gardefee took all these facts into consideration. And I think the overarching point that the Court should respectfully keep in mind here is that the defense, respectfully, has not identified any error. I mean, they disagree with the weight that Judge Gardefee gave to different factors, but they haven't identified any error, much less clear error, in his factual determinations, which underlie his reasonable conclusion that the defendant both poses a serious risk of flight and that there's no condition or combination of conditions that would reasonably assure her return to court. So, unless the Court has any further questions, the government would— What is this, our standard of review? Clear error of law, abuse of discretion, what— Yes, Judge Sack, it's a clear error review standard, which this Court made clear in the United States v. Shakur. So, it's a clear error standard, both with respect to the factual finding as to whether or not the defendant poses a risk of flight and as to whether there's a—any condition or combination of conditions that would secure her return to court. The Court in Shakur said, you know, there could be instances where the district court considers a factor, an impermissible factor, or does not consider all the factors under 3142G, but that's clearly not what happened here. So, we submit that it's a clear error review standard and the defense has not shown that Judge Gardee committed such clear error here. Thank you. Okay. I have quite a few responses here, so I'll try to be quick. You have one minute. Yeah, I know. Okay, Shakur— We gave you more last time as well, as you know. On the standard of review, Shakur explains it very clearly. It is much more complex than just clear error. Clear error is for facts, but for legal conclusions, including how much on the weight given or the refusal to consider alternatives is legal error. Okay. The government still talks basically about the weight of its case. That is not enough to detain someone or even to find a risk of flight. Subnanny says that. It's all over Subnanny that it is not enough that they had a big case—a serious case, a lot of evidence against them. So, to find risk of flight, it was required that they had extraordinary wealth and they had many, many relatives abroad and they had been born abroad and they had the ability to— Is her husband abroad now? No, her husband is in and he hasn't even sought bail and he's not going anywhere. Her husband is detained. Say again? Her husband is detained and he hasn't even sought bail. He was at the airport when he was arrested and he does have U.K. citizenship. They've never lived in the U.K. She has nothing to do with the U.K. They've lived here for years and years. He's been here for years and years and years. So, she has no foreign contacts. Subnanny, they had huge foreign contacts. They had business worldwide. They were extremely wealthy. Even then, the conditions—the court held that there were conditions that were offered that were reasonably assured to guarantee their appearance and reversed the detention order. Okay. Elsewise, the—okay, the New Mexico case was a state case. There are no guidelines there. It's a state case. We don't know how much time they were facing. It was 50-something plus, 50-plus counts. That case was dismissed. The government keeps talking about it as if it was a real case, as if they really did it. It was dismissed after 25 months when the state couldn't prove its case. Not only that, the court in that case pointed out that the SEC refused to prosecute that case, refused to even bring a civil case. It was not a real case. Okay? That doesn't count for anything. The fact that she was flying around when she was on bail for that case, she was allowed to. It doesn't count for anything. Why should we consider it, ma'am? Well, it counts for her appearances. It shows that she appeared. It doesn't count for anything in terms of her guilt or conduct that she committed. But what it is good for is on the side of release. Because the court doesn't set until the jury convicts her. But we're reviewing all of—it seems to me we're reviewing all the factors that are comprised by the components of the case against her, which, at least to me—I will not speak for my colleagues, of course—indicate that there is a capability that would allow her to get the heck out of Dodge and exist elsewhere. And, Your Honor, I— And what is wrong with Judge Gardafy's conclusion to that? Because there's no evidence of that. She has no money. There's millions of sitting off somewhere. I assume the government hasn't seized it, or you'll tell me about that. No, but it's all with the actual fraudster. There's a code of conduct sitting off somewhere. This is a fraud that was created by a man in Sri Lanka. He's in Sri Lanka now. He's absconded. He got some Americans to help him out doing some things. And they're sitting here with no money. He's got the money. He's not involved with them. He hasn't come back to help the others escape, the other two that are out. If he came back, he'd get arrested. Right. Yeah. He has no interest. It doesn't make any sense that he would help them. And there's no reason to think that he would. He's the one who ran off with all the money. He's got the money. You say absconded. Ran off from where to where? He's in Sri Lanka. And he came from here? Where did he run from? No, he is Sri Lankan. He's foreign. He never ran. Absconded, which suggests to me he went... Well, he's a fugitive. He's been indicted, but he's... But he's been in all this time? He's been in Sri Lanka or he's been in Sri Lanka? He's been back... I believe he's been back and forth in various places. I'm not sure about his whereabouts, but he is an indicted person who is a fugitive. He's in Sri Lanka. He's not available to the United States authorities. And there's absolutely no reason to think that he would come forward and help anybody with anything. He just wants to stay away from this. Could you wrap up, please? Okay. I just want to also... Okay. The government talks about the fact that she traveled during this New Mexico case. She was allowed to travel. She was allowed to travel and she did. And then now she's given up her passport and she's offered electronic monitoring. She's also offered a huge bail package co-signed by her son, who is a father with two children and who can't afford to lose $500,000. He's a biochemist. There's absolutely no justification for the court's conclusion that these conditions and no conditions would guarantee her or would reasonably assure her appearance at trial. Thank you. Thank you both for your arguments. The court will reserve decision. The clerk will adjourn court.